IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHELLE ROBINSON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 16-00494-N |
| | ) | |
| NANCY A. BERRYHILL, *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michelle Robinson brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*  With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Docs. 26, 27).

Upon consideration of the parties' briefs (Docs. 15, 16, 23) and those portions of the administrative record (Doc. 14) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised,[1] the Court finds

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument.  (*See* Docs. 25, 28).

that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).

# I.     Background

On March 27, 2012, Robinson filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA"), alleging disability beginning November 15, 2011.[2]   After her applications were initially denied, Robinson requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review.   After holding two hearings, on February 8, 2014, the ALJ issued an unfavorable decision on Robinson's applications, finding her "not disabled" under the Social Security Act and thus not entitled to benefits.  (*See* R. 169 – 178).

On June 19, 2015, the Appeals Council for the Office of Disability Adjudication and Review vacated the ALJ's initial unfavorable decision and remanded Robinson's case to the ALJ for resolution of certain issues.  (R. 183 – 187).  On remand, the ALJ held another hearing on October 15, 2015.  On December 9, 2015, the ALJ issued a second unfavorable decision on Robinson's applications.

---

[2]     DIB provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.  Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).
        "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005).  For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

(R. 17 – 37). The Commissioner's decision on Robinson's applications became final when the Appeals Council denied Robinson's request for review of the ALJ's second unfavorable decision on July 27, 2016. (R. 1 – 5). Robinson subsequently filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* (Doc. 1); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   <u>Standards of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).  *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").  "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to

findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*,

245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[3]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.  *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[4]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work,

---

[4] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. Because the Appeals Council vacated the ALJ's initial unfavorable decision, the Court reviews the ALJ's second unfavorable decision issued December 9, 2015, as the Commissioner's final decision. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

### III.   Analysis

### a.   Summary of the ALJ's Decision

At Step One, the ALJ determined that Robinson had not engaged in substantial gainful activity since the alleged disability onset date, November 15, 2011.  (R. 23).  At Step Two, the ALJ determined that Robinson had the following severe impairments: diabetes mellitus with neuropathy, obesity, osteoarthritis of the left knee, degenerative disc disease of the lumbar spine, obstructive sleep apnea, borderline intellectual functioning ("BIF"), and adjustment disorder with depression.  (R. 23 – 24).  At Step Three, the ALJ found that Robinson did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the relevant Listing of Impairments.  (R. 25 – 28).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Robinson had the RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)[5] with the following non-exertional limitations[:]  The claimant can occasionally stoop, bend, crouch, crawl and climb ramps or stairs, although she cannot climb ladders, ropes or scaffolds.  The claimant should avoid all exposure to extreme cold or extreme heat, as well as unprotected heights or uneven terrain.  The claimant can understand, remember and carryout [sic] simple instructions for two-hour periods and with normal breaks at the mid-morning, lunch and mid-afternoon, she can sustain those activities over the course of an eight-hour workday.  The claimant can tolerate occasional interaction with supervisors and occasional decision-making activities.  Lastly, the claimant can tolerate changes in the work setting occurring no more than in infrequent basis." (R. 28 – 36).  Based on this RFC, the ALJ determined that Robinson was able to perform past relevant work as a fish filleter and meat products packer.  (R. 37).

---

[5] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the ALJ] determine[s] that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

Thus, the ALJ did not proceed to Step Five and found that Robinson was not disabled under the Social Security Act. (R. 37).

### b.    Claim of Error (Treating Physician's Opinion)

Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586

F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *E.g., Bloodsworth*, 703 F.2d at 1240. However,

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179.

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440). That is so because treating sources are

likely in a better position "to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'  With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted).  *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.  Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)).  An ALJ's failure to clearly articulate the reasons for giving less weight to the opinion of a treating physician is reversible error.  *Lewis v. Callahan*, 125 F.3d at 1440 (citing *MacGregor*, 786 F.2d at 1053).

Robinson's sole claim of reversible error is that the ALJ erred at Step Four in assigning less than substantial or considerable weight to the medical opinion of her treating physician, Dr. Perry Timberlake.[6]  The ALJ summarized Dr. Timberlake's

---

[6] Generally, claims of error not raised in the district court are deemed waived.  *See*

opinion as follows:

> On October 7, 2013, just a few days after the claimant's most recent largely normal physical examination, Dr. Timberlake completed a *Medical Source Statement (Physical)* form, on which he opined that the claimant was only capable of sitting two hours during an eight-hour workday and standing or walking one hour during an eight-hour workday. Dr. Timberlake indicated that the claimant could only lift and/or carry 1 pound frequently and 5 pounds occasionally, and that she could never bend, stoop or reach (including overhead reaching). He noted that the claimant could rarely push or pull with her upper and lower extremities, balance or climb stairs or ladders. Dr. Timberlake did indicate, however, that the claimant could occasionally grasp, twist, handle, finger, operate motor vehicles and work with or around hazardous machinery. Lastly, Dr. Timberlake indicated the claimant would miss more than three days of work each month because of her impairments (Exhibit 14F).
>
> Dr. Timberlake also completed a *Clinical Assessment of Pain* form, on which he indicated that the claimant's pain was "profound and intractable, virtually incapacitating."[] He indicated that practically any physical activity would increase the claimant's level of pain to such an extent that bed rest and/or medication would be necessary. Lastly, Dr. Timberlake opined that the claimant's medications would place

---

*Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court … Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, No. 16-11238, 2016 WL 7321208, at *2 (11th Cir. Dec. 16, 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

"severe" limitations on even the most simple, everyday tasks  (Exhibit 14F).
…

In September 2015, Dr. Timberlake again completed *Medical Source Statement (Physical)* and *Clinical Assessment of Pain* forms (Exhibit 27F).   Dr. Timberlake's opinions on this set of forms mirrors his opinions on the forms he completed in October 2013 (Exhibit 14F).

(R. 33 – 34).  The ALJ weighed Dr. Timberlake's opinions in these forms as follows:

On these forms, Dr. Timberlake indicated that the claimant was only capable of sitting for two hours during an eight-hour workday and standing in or walking one hour during an eight-hour workday. Additionally, he found that the claimant could lift only 1 pound frequently and 5 pounds occasionally.  The remaining opinions on this form will not be discussed here, is [sic] they have been previously discussed elsewhere in this decision.  Nonetheless, after reviewing Dr. Timberlake's answers on these forms and comparing them to his actual treatment records of the claimant, the administrative law judge finds that they are completely inconsistent in nature.  The overwhelming majority of the claimant's physical examinations from Dr. Timberlake were essentially normal in nature or showed only minor deficiencies. Dr. Timberlake's records do not document any significant physical limitations or any reports of significant pain.  Dr. Timberlake's opinion that the claimant would miss more than three days of work each month because of her impairments is also not substantiated by the evidentiary record as a whole.  His opinions regarding the claimant's level of pain, and its limiting effects, are simply not consistent with his own treatment record of the claimant.  Both Dr. Chu and Dr. Mani's findings directly contradict Dr. Timberlake's opinion.  Their opinions are supported by the claimant's physical exams throughout the record. For these reasons, Dr. Timberlake's opinions on these forms are given little weight.  Additionally, after another almost completely normal physical examination, Dr. Timberlake opined that "this patient is completely and totally disabled to do gainful work now or in the future."  This particular opinion is also given little weight, as this issue is strictly reserved to the Commissioner of Social Security (20CFR 404.1527(d)).

(R. 36).

The ALJ found good cause to assign little weight to Dr. Timberlake's opinions because they were inconsistent with the doctor's own medical records, *Winschel*, 631 F.3d at 1179, and substantial evidence supports that decision.   The ALJ summarized Dr. Timberlake's records as follows:

> In August 2013, the claimant complained of having back pain but her physical examination was again normal (Exhibit 13F [R. 584 – 598 - Hale County Hospital Clinic Records dated 8/29/2013 to 9/30/2013]).
>
> Treatment records from Dr. Timberlake show that the claimant complained of back pain on several occasions in 2014.  No diagnostic studies were obtained at the time and the claimant was simply treated with pain medications (Exhibit 20F [R. 634 – 651 - Hale County Hospital Clinic Records dated 2/3/2014 to 8/4/2014]).  In January 2105 [sic], Dr. Timberlake obtained x-rays of the claimant's lumbar spine, although they only showed degenerative changes at the L3-L4 level with well-maintained disc spaces (Exhibit 23F [R. 665 – 686 - Hale County Hospital Clinic Records dated 10/8/2014 to 7/10/2015])…
>
> …
>
> In July 2013, the claimant presented to Dr. Timberlake and indicated that she wanted to have him become her primary care physician (Exhibit 11F).  She complained of right heel pain, swelling of the ankles and low back pain, and Dr. Timberlake noted the presence of tenderness to palpation in her lumbar spine, as well as CVA tenderness.  Dr. Timberlake diagnosed the claimant with obstructive sleep apnea, and recommended that she have a sleep study performed. Treatment records over the next few months from Dr. Timberlake show that the claimant complained of having hand pain, throat pain and burning in her left knee and left thigh (Exhibit 13F).   On September 30, 2013, the claimant's primary complaints were of vaginal itching, burning with urination and neuropathy.   However, Dr. Timberlake also noted that the claimant appeared "quite depressed." Depression was added to her list of diagnoses, and Dr. Timberlake

opined that "this patient is completely and totally disabled to do gainful work now or in the future" (Exhibit 13F).

…

…Dr. Timberlake's diagnosis of obstructive sleep apnea, which was rendered without the benefit of having any diagnostic testing at that time, was subsequently confirmed by James Geyer, M.D., who administered a polysomnography test [sic] the claimant (Exhibits 15F and 18F). Although the claimant was found to have obstructive sleep apnea, she was prescribed a CPAP device for symptom control and the evidentiary record does not contain any further complaints or limitations related to this condition.

…

…During the first several months of 2014, the claimant continued to receive her primary care from Dr. Timberlake at Hale County Hospital Clinic (Exhibit 20F). Although she had multiple complaints during these visits, except for her morbid obesity, her physical examinations were essentially normal (Exhibit 20F). In January 2015, the claimant again complained of low back pain. An x-ray of her lumber spine obtained during this visit revealed no evidence of any acute process, although degenerative changes were noted at the L3-L4 level (Exhibit 23F).

In April 2015, the claimant complained of having epigastric pain and low back pain. Left-sided costovertebral angle tenderness was noted, and she was diagnosed with simple back pain (Exhibit 23F). The claimant's treatment records over the next few months fail to document any significant complaints of any kind (Exhibit 23F). However, these treatment records do document the claimant's Body Mass Index of 40.68 (Exhibit 23F).

In August 2015, the claimant returned to Dr. Timberlake's office with complaints of a one-week history of left knee pain. Physical examination revealed "some" laxity, she was referred to physical therapy…

(R. 30, 32 – 34). Robinson takes no issue with the ALJ's view of Dr. Timberlake's

records as discussed above, and the undersigned finds that it substantially supports the ALJ's determination.

Robinson's own summary of the treatment notes of Dr. Timberlake and others simply point out various diagnoses made. (*See* Doc. 16 at 3 – 5).   She also claims that Dr. Timberlake's opinions are not inconsistent with his treatment records because those records "show he administered injections and prescribed medications[,]" declaring "[i]t is inconceivable that a physician would administer injections and prescribe medications for a condition that did not warrant such treatment." (*Id.* at 6). However, "[t]he mere existence of [] impairments does not reveal the extent to which they limit [Robinson's] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Similarly, it does not follow that Robinson must be found disabled merely because she is receiving medical treatment. Moreover, Robinson cites only one instance in which Dr. Timberlake "administered pain medication by injection and prescribed Tylenol #3[,]" (Doc. 16 at 4 (citing R. 674 – 676)), indicating that whatever impairments required such treatment were largely controlled by it. *Cf. Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("a remediable or controllable medical condition is generally not disabling"). At the very least, substantial evidence supports the ALJ's articulated "good cause" to reject Dr. Timberlake's opinion.

Robinson also argues the ALJ erred by assigning "great weight" to the

opinion of nonexamining physician Dr. Mani, "who affirmed the findings of" another nonexamining physician, Dr. Gragg, after find finding the opinions were "consistent with the evidentiary record as a whole…"  (R. 36).   In rejecting Dr. Timberlake's opinion, the ALJ noted that the opinion was "directly contradict[ed]" by "Dr. Mani's findings…"  (R. 36).  It is true that "[t]he good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (citing *Johns v. Bowen*, 821 F.2d 551 (11th Cir. 1987) (per curiam)).  However, any reference to Dr. Mani's opinion in rejecting Dr. Timberlake's is harmless because the ALJ articulated other grounds showing "good cause," and those grounds are supported by substantial evidence, *see supra*.

It is also true that "[t]he reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision[,]" *id.* (citing *Spencer on Behalf of Spencer v. Heckler*, 765 F.2d 1090 (11th Cir. 1985) (per curiam), and *Strickland v. Harris*, 615 F.2d 1103 (5th Cir. 1980)), and that the " 'opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.' "  *Id.* (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)).  However, the ALJ did not rely solely on the opinions of the nonexamining physicians in formulating the RFC, instead also relying on the extensive objective medical evidence of record, including the

treatment records of Dr. Timberlake and the findings of consultative examining

physician Dr. Chu[7] (with which the ALJ found the nonexamining opinions to be

consistent).[8]

_____

[7] To the extent Robinson argues the ALJ erred in assigning "some weight" to Dr. Chu's report, the undersigned disagrees. While Robinson points out that Dr. Chu's report offered no diagnosis or impression because Dr. Chu was "[u]nable to make a determination at th[at] time due to lack of requested records" (R. 497), the ALJ acknowledged that Dr. Chu's report "did not offer any diagnoses or render an opinion as to the claimant's functional limitations…" (R. 36). However, the ALJ also noted, correctly, that Dr. Chu's report detailed substantial "physical findings" from his examination (R. 36, 494 – 496). Thus, contrary to Robinson's assertion, the report as a whole did not amount to "no evidence" simply because Dr. Chu did not provide a medical opinion, and the ALJ did not act improperly in assigning weight to the report. *Cf. Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (Commissioner must sufficiently explained the weight given to "obviously probative exhibits").

[8]      Robinson cites *Johnson v. Barnhart*, 138 F. App'x 266 (11th Cir. 2005) (per curiam) (unpublished) in support of this argument, noting the panel's determination that, "[a]lthough the ALJ may have properly rejected [the treating physician]'s RFC evaluation for good cause, as it was inconsistent with his own progress notes, the ALJ nevertheless, erred in giving greater weight to the opinion of Maloy, a non-examining physician." 138 F. App'x at 270. However, the ultimate reversible error identified in *Johnson* was the ALJ's failure "to resolve the inconsistencies" in the record as to whether the claimant could return to her past relevant work by soliciting vocational expert testimony. *Id.* at 271. More specifically, while the ALJ determined that the claimant was capable of performing past work, the panel held that "Maloy's RFC evaluation is not dispositive, as its conclusions are from a non-treating, non-examining physician, and the other medical records express no indication of Johnson's ability to perform her past work." *Id.* In other words, the only record evidence that the claimant could perform past work was the nonexamining physician's opinion, which, under circuit precedent, does not constitute substantial evidence "standing alone." *Lamb*, 847 F.2d at 703.

       Here, Robinson's claim of reversible error focuses solely on whether the ALJ showed good cause to reject Dr. Timberlake's opinion, which the undersigned has answered in the affirmative. While Dr. Mani's opinion alone would not be substantial evidence to support the ALJ's decision, the ALJ also relied on objective medical records in determining that Robinson could perform past work, and Robinson does not attempt to explain how these records are insufficient to support this finding. *Cf. Johnson*, 138 F. App'x at 271 ("Johnson's past work as a cashier

Accordingly, the Court **OVERRULES** Robinson's sole claim of error and thus finds that the Commissioner's final decision denying Robinson benefits is due to be **AFFIRMED**.

### IV.   <u>Conclusion</u>

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued July 27, 2016, denying Robinson's applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).  Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 27th day of July 2017.

<u>/s/ Katherine P. Nelson</u>
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

required standing for about four and a half hours a day, walking about one hour, siting for about thirty minutes, and minimal lifting. Her job as a security guard required walking for five hours, sitting for one hour, standing for one hour, and minimal lifting. Although the vocational analysis indicated that the security guard position was light exertional work, which Johnson was capable of doing, the medical records are inconsistent with this analysis, as the records show that she continued to experience pain in her back and legs and she walked with a cane. Even if her level of pain was not credible, as discussed above, the medical records do not support a finding that she was able to return to her past work.").